UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH BAKER,

                Petitioner,                **DECISION AND ORDER**
                                       **No. 07-CV-6446(VEB)**

   -vs-

ROBERT KIRKPATRICK,

                Respondent.
_____

## I.    **Introduction**

Proceeding *pro se*, Kenneth Baker ("Baker" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state custody pursuant to a judgment of conviction following a jury trial in New York State Supreme Court (Monroe County) on charges of murder in the second degree (New York Penal Law ("P.L.") §125.25(2)) and assault in the first degree (P.L.§120.10 (1)). Baker was sentenced as a second felony offender to consecutive terms of imprisonment of 25 years to life and 15 years, on the murder and assault convictions, respectively.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## II.    **Factual Background**

Shortly before 10:00 p.m. on June 1, 2001, Preston Mitchum ("Preston"), his older brother Jerold Mitchum ("Jerold"), and their friends Christopher Jones ("Christopher") and Leroy Robinson ("Leroy") were hanging around outside of the Good Guy's Mini-Mart on North

Clinton Avenue in Rochester (192-196, 292-295, 358-362)[1]. Preston and Christopher were

sharing some food, while Jerold and Leroy were a few feet away in the store entryway. Baker

came running across North Clinton Avenue, wielding a revolver hidden under a paper sack

(197-201, 298-299, 302). All of the witnesses described Baker as wearing camouflage pants and

a hooded jacket (described as a "hoody" by the witness) (200, 300, 366). Baker ran across the

street and, according to the witnesses, "[b]efore he even got to the curb, he just started shooting"

(591). The four friends were all "close" together when the shooting began (369).  Preston and

Christopher were two or three feet apart when the shooting started, and Leroy and Jerold were

likewise only a few feet further away (204, 294, 370- 372).

Leroy was not positive after the first shot whether anyone had been hit. He stated,

however, "[W]e were so close, I knew somebody got hit" (369). Preston was shot first, followed

by Christopher, who fell to the ground (206-208). Petitioner then turned his full attention on

Christopher, firing at him until the gun clicked empty (210-214. 372, 591-594). Jerold and Leroy,

meanwhile, had fled (304). When the shooting stopped, they came back to check on Preston until

the paramedics arrived (309-310, 373).

Preston died the next day as a result of respiratory distress syndrome caused by a bullet

wound to his chest, which had damaged the larynx, lung and veins in the neck (311, 431-432,

445-446). The only other place Preston had been shot was in the leg; that wound was only

"superficial" (433). Although Christopher had been shot three times, he survived (221-223).

Christopher stated that he had seen Baker around the neighborhood "once or twice," but

did not know Baker's real name (226-227).

---

[1]        Numbers in parentheses refer to pages from Petitioner's trial transcript.

A few of weeks before the killing, Jerold had been involved in a fist-fight with Stanley Hinson ("Stanley"), who hung around with Defendant. The altercation had occurred in front of the Good Guy's Mini-Mart.  While Jerold, Stanley, and another person were fighting, shots were fired. Jerold looked up and saw Petitioner across the street, firing a gun similar to the one he used on the day Preston and Christopher were shot (317-319, 376-377).

Testifying with regard to the June 1, 2001 incident, Jerold, Christopher, and Leroy all identified Petitioner as the shooter (216, 303, 371).  Two other unrelated witnesses saw the shooting as they were stopped in their car at an intersection near the store. These witnesses stated that the shooter had passed directly in front of the car as he went to shoot at the group of young men in front of the mini-mart. The driver, Sandra Lester ("Lester"), was able to identify him (590).

Testifying to the present incident, Shannon Daszczyszak ("Daszczyszak"), who had gone with a friend to the house where Petitioner was known to stay (611-612), said that when she arrived, a man dressed in camouflage pants and a black hoody (475) answered the door. This man was holding a gun and proceeded to have conversation with her friend during which she (Daszczyszak) heard Preston's name mentioned (479).  Michael Wood ("Wood"), who was housed at the jail with Baker testified that Baker had admitted the shooting to him (556-559).

Baker presented an alibi defense and a defense of false identification. In support of his alibi, Baker called several friends as witnesses to testify that he had been at a party across town at the time of the shooting (685, 702, 730, 757).

The jury returned a verdict acquitting Baker of intentional murder but convicting him of depraved indifference murder. The jury also convicted Baker of the assault charge.

-3-

Baker was sentenced as noted above. The Appellate Division affirmed his conviction on direct appeal. *People v. Baker*, 21 A.D.3d 1435, 801 N.Y.S.2d 684 (App. Div. 4th Dept. 2005), *leave to appeal denied*, 6 N.Y.3d 773, 844 N.E.2d 795, 811 N.Y.S.2d 340 (N.Y. 2006). Baker filed an application for a writ of error *coram nobis* challenging his the performance of his appellate counsel. This was summarily denied by the Appellate Division. *People v. Baker*, 41 A.D.3d 1323, 836 N.Y.S.2d 482 (App. Div. 4th Dept.), *leave to appeal denied*, 9 N.Y.3d 872, 874 N.E.2d 751, 842 N.Y.S.2d 784 (N.Y. 2007).

This timely habeas petition followed. For the reasons set forth below, the petition is denied.

## III.     Standard of Review under 28 U.S.C. § 2254(d)

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" federal law as determined by the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or (b) "the state court considers facts that are materially indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law occurs if (a) " 'the state court identifies the correct governing legal rules from the

[Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' " or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal principle to a new context where it should not apply, or fails to extend it where it should apply." *Williams*, 529 U.S. at 407.

## IV.   The Adequate and Independent State Ground Doctrine and Procedural Default

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations and internal quotations omitted). Even where the state court also considers a petitioner's arguments on the merits, that is of no moment because "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n. 10; *accord Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

## V.   Analysis of the Petition

**A.     Ground One: Insufficiency of the Evidence Supporting the Depraved Indifference Murder Conviction**

Baker asserts that the only reasonable view of the evidence is that he intentionally killed Preston Mitchum, and he thus contends that the evidence is legally insufficient to support the conviction of depraved indifference murder. On direct appeal, the Appellate Division rejected this claim as unpreserved due to trial counsel's failure to make a specific, timely objection. *People v. Baker*, 21 A.D.3d at 1435 (citing *People v. Gray*, 86 N.Y.2d 10, 19 (N.Y. 1995)). The Appellate Division went on to consider the merits of the claim and held that, in any event, it lacked merit.

In New York, an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss. *People v. Thomas*, 36 N.Y.2d 514, 369 N.Y.S.2d 645, 330 N.E.2d 609, 610 (N.Y. 1975). The motion must be made in order for an insufficient evidence claim to be preserved for review, *People v. Bynum*, 70 N.Y.2d 858, 523 N.Y.S.2d 492, 518 N.E.2d 4 (N.Y. 1987), and the motion must be made "at the close of the People's case." *Thomas*, 369 N.Y.S.2d 645. Moreover, New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged. *See People v. Gray*, 86 N.Y.2d 10, 20-22, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y.1995).

As Respondent argues, Baker's insufficiency-of-the-evidence claim is procedurally barred due to the Appellate Division's reliance upon *People v. Gray*, 86 N.Y.2d at 19, as an "adequate and independent state ground," to dismiss the claim as unpreserved. *See Harris v. Reed*, 489 U.S. 255, 260-61, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (Federal habeas corpus review

of a state conviction is prohibited if a state court judgment is based on an "adequate and

independent state ground," such when the state court "explicitly invokes a state procedural bar

rule as a separate basis for decision.").

The Second Circuit recognizes New York's contemporaneous objection rule as an

independent and adequate state procedural rule barring habeas review. *E.g.*, *Richardson v.

Greene*, 497 F.3d 212, 218 (2d Cir.2007). "New York's preservation rule, codified at N.Y. Crim.

P. Law § 470.05(2), 'require[s], at the very least, that any matter which a party wishes the

appellate court to decide have been brought to the attention of the trial court at a time and in a

way that gave the latter the opportunity to remedy the problem and thereby avert reversible

error.'" *Garcia  v. Lewis* , 188 F.3d 71, 78  (2d Cir.1999) (quoting *People v. Luperon*, 85 N.Y.2d

71, 78, 623 N.Y.S.2d 735, 647 N.E.2d 1243 (N.Y.1995)); *accord*, *e.g.*, *Garvey v. Duncan*, 485

F.3d 709, 714-15 (2d Cir.2007). "A general objection is not sufficient to preserve an issue since

such would not alert the court to defendant's position. Instead New York's highest courts

uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically* focus

on the alleged error." *Richardson*, 497 F.3d at 218 (quoting *Garvey*, 485 F.3d at 714-15) (citation

omitted; emphasis added in *Richardson*). Under the circumstances, I find that the Appellate

Division relied upon a state ground that was both independent of the federal question and

adequate to support the judgment when it rejected of Baker's insufficiency-of-the-evidence claim

based upon the lack of a specific objection. *See id.*

The Court now turns to whether Baker can overcome the procedural default caused by the

Appellate Division's reliance upon an adequate and independent state ground by showing either

"cause and prejudice" or a "fundamental miscarriage of justice."

In order for attorney error to constitute "cause" excusing the procedural default, counsel's performance must be so egregious as to fail to satisfy the defendant's Sixth Amendment right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Murray v. Carrier*, 477 U.S. at 488-89, 106 S.Ct. 2639). The Supreme Court has held that the exhaustion doctrine "requires that a claim of ineffective assistance be presented to state courts as an independent claim before it may be used to establish cause for a procedural default" in the context of a petition for a federal writ of habeas corpus. *Edwards*, 529 U.S. at 451 (citing *Murray*, 477 U.S. at 489). Thus, to claim that attorney error excuses a procedural default, the Supreme Court has stated that a habeas petitioner must either have properly presented and exhausted an ineffective assistance of counsel claim in the state courts or, if the ineffective assistance of counsel claim is itself procedurally barred, separately show that there is "cause" excusing said procedural default as well as prejudice resulting from the error. *See* 529 U.S. at 453.

Here, Baker raised on direct appeal an ineffective assistance claim based upon trial counsel's failure to specifically preserve the insufficiency-of-the-evidence claim. The Appellate Division did not specifically address this contention, but simply held that Petitioner "received meaningful representation[.]" *Baker*, 21 A.D.3d at 1436 (citation omitted). The Second Circuit has held that New York's "meaningful representation" standard is not "contrary to" *Strickland*, which requires a showing of deficient performance and resulting prejudice–that is, a reasonable probability of a different result but for counsel's alleged error.

Here, it was not an unreasonable application of *Strickland* for the Appellate Division to dismiss the ineffective assistance of trial counsel claim because Baker cannot demonstrate that he

was prejudiced by the failure to preserve the insufficiency-of-the-evidence since the Appellate Division considered the merits of the issue notwithstanding the lack of preservation. Because Baker does not have a meritorious ineffective assistance claim to use as "cause" for the procedural default, he cannot fulfill the cause and prejudice test.

Showing a "fundamental miscarriage of justice" requires a demonstration of "actual innocence." *See*, *e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (."The miscarriage of justice exception is concerned with actual as compared to legal innocence."). The Supreme Court has emphasized that the exception has a "narrow scope," *Sawyer*, 505 U.S. at 339.  "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *accord Calderon*, 505 U.S. at 339. Baker has not come forward with new reliable evidence of his actual innocence, and so, under the Supreme Court's current teachings, he cannot fulfill the fundamental-miscarriage exception.

Accordingly, the  insufficiency-of-the-evidence claim is subject to an unexcused procedural default and habeas review is precluded.

**B.      Ground Two: Ineffective Assistance of Trial Counsel – Failure to Preserve Insufficiency-of-the-Evidence Claim**

As was permitted at the time of his trial, Baker was charged with intentional murder, P.L. § 125.25(1), and depraved indifference murder, P.L. § 125.25(2), in the alternative. *See  People v. Gallagher,* 69 N.Y.2d 525, 529-530, 516 N.Y.S.2d 174, 508 N.E.2d 909 (N.Y. 1987). Baker argues that his trial counsel was ineffective for failing to preserve his claim that the proof of

depraved indifference murder was insufficient because the trial evidence demonstrated only an intent to cause death, not recklessness under circumstances evincing a depraved indifference to human life. At the time of Baker's trial, the law regarding depraved indifference murder was reflected by *People v. Sanchez*, 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 (N.Y. 2002), under which "[t]he mens rea of depraved indifference murder was recklessness and, as [the New York Court of Appeals] held in [*People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (N.Y. 1983)], "under circumstances evincing a depraved indifference to human life" defined the factual setting, viewed objectively, in which the risk-creating conduct occurred. *Policano v. Herbert*, 7 N.Y.3d 588, 602, 825 N.Y.S.2d 678, 859 N.E.2d 484 (N.Y. 2006) (noting that *Sanchez* "ratified *Register*' s continued authority" and discussing elements of depraved indifference murder in 2001).[2]

At the time of Petitioner's trial and verdict, the shift in New York's jurisprudence had not yet begun; the *Register*/*Sanchez* line of authority was controlling, and the New York Court of Appeals held that it was not inappropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder. *People v. Sanchez*, 98 N.Y.2d at 384, 748 N.Y.S.2d 312, 777 N.E.2d 204 (asking "whether, on this record, based on an objective assessment of the risk defendant recklessly created and disregarded, the

---

[2]     At the time of Petitioner's trial in 2002, the controlling law on depraved indifference murder was as stated in *People v. Register*, 60 N.Y.2d 270, 273-75, 469 N.Y.S.2d 599, 457 N.E.2d 704 (N.Y.1983) (upholding conviction for depraved indifference murder where defendant entered a crowded bar with a pistol, drank for several hours stating that he was "'going to kill somebody tonight,' or similar words," then later shot at close range a person who had been arguing with his friend, shot a second person by mistake, and shot a third person for no explained reason), *overruled by People v. Feingold*, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (N.Y. 2006). Recklessness was the required mental state for depraved indifference murder and the element of "depraved indifference" was assessed based on an objective review of the circumstances of the crime. *People v. Sanchez*, 98 N.Y.2d 373, 381-81, 748 N.Y.S.2d 312, 777 N.E.2d 204 (N.Y. 2002) (upholding conviction for depraved indifference murder when defendant fired a gun pointed at the victim's chest from a distance of twelve to eighteen inches and then fled), *overruled by People v. Feingold*, 7 N.Y.3d 288.

likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life"). The New York Court of Appeals reasoned that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," and that the jury could "reasonably have concluded that defendant's conduct was either reckless and depraved, or intentional." 98 N.Y.2d at 384, 386, 377-78 (noting that "the jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting-perhaps to disable or frighten [the victim], rather than to kill him"). Similarly, the Second Circuit found that the *Register/Sanchez* cases stood for the proposition that "the evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional." *Policano v. Herbert*, 430 F.3d 82, 91 (2d Cir. 2005).

As noted above, to prove a claim of ineffective assistance of trial counsel under *Strickland*, a defendant  must show that: 1) his lawyer's performance fell below an objective standard of reasonableness; and 2) but for the errors of his lawyer, there is a reasonable probability that result of his trial would have been different. *Strickland*, 466 U.S. at 687-89. Even an error by counsel was "professionally unreasonable," it "does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment."  *Id.*

Under the deferential *Strickland* standard, however,  a court must "judge the reasonableness of the counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.  Defense counsel is not required by the Sixth Amendment to "'forecast changes or advances in the law.'" *Jameson v. Coughlin*, 22 F.3d 427,

429-30 (2d Cir.1994) (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir.) ("The Sixth

Amendment does not require trial counsel to forecast changes or advances in the law, or to press

meritless arguments before a court."), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d

116 (1993); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) ("Counsel is not

required to forecast changes in the governing law.") (citations omitted). Therefore, trial counsel's

failure to raise even a potentially valid new challenge to the constitutionality of the state statute

certainly does not permit this Court to find that his representation did not constitute "objectively

reasonable conduct" as measured under "prevailing professional norms." *Strickland*, 466 U.S. at

687-89. *See Alexander v. Graham*, No. 07-CV-59 (NG), 2008 WL 4239167, at *6 (E.D.N.Y.

Sept. 11, 2008) ("Under *Sanchez*, whether Alexander intended to kill Lee or consciously

disregarded the substantial risk that such a shot would cause Lee's death was 'a classic matter for

the jury.' *Policano*, 7 N.Y.3d at 599, 825 N.Y.S.2d 678, 859 N.E.2d 484. Indeed, assuming the

evidence demonstrated 'strong proof of intent,' such proof, under *Sanchez*, 'did not foreclose the

jury from finding recklessness and depraved indifference.' *Policano*, 7 N.Y.3d at 600, 825

N.Y.S.2d 678, 859 N.E.2d 484, citing *Sanchez*, 98 N.Y.2d at 378, 748 N.Y.S.2d 312, 777 N.E.2d

204. Alexander's jury could reasonably have found that his conduct 'presented such a

transcendent risk of causing [his victim's] death that it readily [met] the level of manifested

depravity needed to establish [depraved indifference] murder.' *Sanchez*, 98 N.Y.2d at 378, 748

N.Y.S.2d 312, 777 N.E.2d 204. Thus, had Alexander's trial counsel objected to the sufficiency of

the evidence of depraved indifference murder on the ground that the jury would be warranted

only in finding intentional murder, such an objection would have been unsuccessful. Trial

counsel's failure to make that objection therefore does not fall below 'an objective standard of

reasonableness,' *Strickland,* 466 U.S. at 687-88, and, absent counsel's failure to object, 'the result of the proceedings would [not] have been different,' *id*. at 694."); *see also Cruz v. Conway*, No. 05 CV 4750(ARR), 2007 WL 1651855, at *7 (E.D.N.Y. June 6, 2007) ("Rather, as the New York Court of Appeals has recently explained, its decisions in this area starting in 2003 'represent a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in' prior cases, which have since been 'explicitly overruled.' *Policano*, 7 N.Y.3d at 603. Petitioner was, therefore, not denied effective assistance of counsel on this basis [i.e., trial counsel's failure to contest submission of depraved indifference murder count to the jury].") (citations omitted)).

Given the state of the law at the time of Petitioner's trial, counsel's failure to object to the sufficiency of evidence of depraved indifference murder does not constitute representation falling below "an objective standard of reasonableness" under "prevailing professional norms." *See Strickland*, 466 U.S. at 687-88. *Accord, e.g.*, *Cruz v. Conway*, 2007 WL 1651855, at *7. Furthermore, there is no reasonable likelihood that the trial court would have granted the motion for a trial order of dismissal on the basis that there was insufficient proof of depraved indifference, given the state of the law and the proof adduced, viewed in the light most favorable to the prosecution. Finally, despite the lack of preservation, the Appellate Division reviewed the merits of the insufficiency-of-the-evidence claim on the merits on direct appeal:

> The record establishes that defendant approached the two victims and shot the first victim [Preston Mitchum] in the chest, which eventually caused the death of that victim, and defendant then shot the second victim [Christoper Jones, who suffered non-fatal wounds]. The first victim ran after being shot, but defendant did not follow him. Instead, defendant approached the second victim, stood over him, and continued to shoot him from inches away, pulling the trigger of his weapon while aiming it at the second victim even after there was no remaining

> ammunition. We thus conclude that a rational jury could have had a reasonable doubt with respect to whether defendant's acts were "specifically designed to cause the death of the [first] victim" (*People v Gonzalez*, 1 NY3d 464, 467 (2004); *see People v Garbutt*, 9 AD3d 255 (2004), *lv denied* 3 NY3d 674 (2004)).

*Baker*, 21 A.D.3d at 1436.

Because Baker has failed to fulfill either the "deficient performance" or "prejudice" prong of *Strickland*, he cannot obtain habeas relief based upon trial counsel's failure to object to the sufficiency of evidence on the element of depraved indifference.

### C.  Ground Three: Erroneous Admission of Prior Bad Acts/Uncharged Crimes

Petitioner contends that the Court erred in allowing the admission of testimony concerning the fight that occurred between Petitioner and Jerold Mitchum approximately three weeks prior to the shooting. Petitioner argues that it violated *People v. Molineux*, 168 N.Y. 264, 291, 61 N.E. 286 (1901), because it was unduly prejudicial and only probative of his alleged propensity towards violence and criminality. Respondent argues that the altercation was not offered as improper "general propensity" evidence, proscribed by *Molineux* but rather was relevant both to motive and identity. Respondent explains that Petitioner's conduct towards Jerold during the fight, and in support of Petitioner's friend Stanley Hinson, were relevant to showing that Petitioner was the individual who shot at the group of people (of which Jerold was a part) outside the mini-mart.

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).  "In general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue."

-14-

*Roberts v. Scully*, 875 F. Supp. 182, 189 (S.D.N.Y.1995), *aff'd mem.*, 71 F.3d 406 (2d Cir.1995). Habeas courts in this Circuit have held that a decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under *Molineux* constitutes an evidentiary ruling based in State law. *E.g.*, *Roldan v. Artuz*, 78 F. Supp.2d 260, 276-77 (S.D.N.Y. 2000) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of constitutional violation . . . because *Molineux* is a state law issue.") (citations omitted)).

In general, evidence of uncharged crimes is inadmissible in a criminal trial due to the danger that the jurors will convict due to their perception that the defendant is predisposed to commit crime rather than determining the defendant's guilt or innocence based upon a consideration of the evidence regarding the charged offense. *E.g.*, *Molineux*, 168 N.Y. at 291. However, in *Molineux* the New York Court of Appeals held that evidence of other crimes or bad acts may be admitted to the extent that it is relevant to an issue other than the defendant's criminal tendency, such as motive, intent, *modus operandi*, common scheme or plan, or identity. *Id.* at 293. Thus, New York law is "well settled that 'where the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality . . . the probative value of the evidence justifies its admission, notwithstanding the potential for incidental prejudice[.]'" *People v. Lee*, 284 A.D.2d 412 (App. Div. 2d Dept. 2001) (holding that evidence of the defendant's prior assault on the victim was properly admitted at his murder trial, because "evidence that he previously assaulted the victim was admissible to establish his motive and intent"; *People v Wheeler,* 257 A.D.2d 673 (App. Div. 2d Dept. 1999) (holding that evidence that the defendant had previously assaulted the murder victim with a baseball bat "was properly admitted because it was relevant to

the defendant's motive and intent, and precluded a possible defense of justification"). Such evidence is also relevant to prove identity where, as here, the defendant introduces an alibi defense. *See People v. Jordan*, 193 A.D.2d 890, 892 (App. Div. 3d Dept. 1993) (holding that "defendant's prior abusive treatment of and threats to the victim were admissible under . . . *Molineux* . . , to show, *inter alia*, defendant's . . . identity, defendant having filed a notice of alibi").

It is true, as Petitioner points out, the previous altercation had not involved either of the victims, Preston Mitchum or Christopher Jones, directly. However, the fight did involve Preston's brother and Christopher's friend, Jerold.  Respondent explains that Petitioner's argument against relevance ignores several critical factors–the familial relationship between the Mitchum brothers, Christoper's friendship with Jerold, and Jerold's presence in the group of four individuals upon whom Petitioner fired his gun. As set forth above, Jerold was standing right with Christopher and Preston when Petitioner began firing indiscriminately. Respondent argues that it would not have been unreasonable for the jury to infer that Petitioner was actually "gunning for" Jerold, and simply did not care which member of the group he hit in the process.

The Appellate Division did not decide whether there was *Molineux* error or not, stating that "[e]ven assuming, *arguendo*, that [the trial] [c]ourt erred in admitting *Molineux* evidence," 21 A.D.3d at 1436, "any such error is harmless[,]" *id.*, because "[t]he evidence of guilt is overwhelming, and there is no significant probability that the jury would have acquitted defendant but for the alleged error[.]" *Id.* (citations omitted).

Under the circumstances, I agree with Respondent that the prior altercation between Jerold and Petitioner's friend, Stanley, Petitioner's reaction to that altercation (i.e., firing his gun

-16-

during the fight) was relevant to prove Petitioner's motive for the subsequent shooting in which

Preston was killed. The previous incident also was relevant proof of identity and, arguably, a

*modus operandi*, i.e., a unique method of operation, since both Jerold and Leroy Robinson

testified that Petitioner had the gun hidden under a paper bag when he shot it on the day of the

fight involving Jerold and Stanley. On the day Preston was shot, Petitioner similarly secreted the

gun under a paper bag (319, 376).  In addition, Jerold testified that the gun Petitioner fired during

the previous fight looked like the same one that was used to kill his brother in front of the mini-

mart (318).

However, even if there was error under New York's *Molineux* rule, the Appellate

Division did not unreasonably apply clearly established Supreme Court precedent in concluding

that such error was harmless.  Unlike the state court's inquiry on direct appeal, the habeas court's

"task to determine whether the exclusion [or admission] of evidence was an error of

constitutional dimension, not the more narrow inquiry whether a constitutional error has been

shown to have been harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18,

22-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967)." *Taylor v. Curry*, 80 F.2d 886, 891 n. 6 (2d

Cir. 1983). An erroneous evidentiary ruling warrants habeas relief "only where the petitioner can

show that the error deprived him of a fundamentally fair trial." *Zarvela v. Artuz*, 364 F.3d 415,

418 (2d Cir.2004); *accord Taylor*, 80 F.2d at 891 ("Erroneous evidentiary rulings do not

automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of

habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error

deprived her of a *fundamentally fair trial*.") (citations omitted; emphases in original);  *see also*

*Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[F]ederal

habeas corpus relief does not lie for errors of state law[.]");.

The "introduction of unfairly prejudicial evidence against a defendant in a criminal trial is contrary to both state law and federal law." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (internal citations omitted). Nevertheless, "not all erroneous admissions of such evidence are errors of constitutional dimension." *Id.* Rather, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Id.* (quoting *Dowling v. United States*, 493 U.S. at 352, 110 S.Ct. 668 (internal quotation marks omitted)).

Demonstrating that erroneous admission of other unfairly prejudicial evidence amounts to a denial of due process requires that the evidence, "viewed objectively in light of the entire record," must have been " 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.' " *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992) (in turn quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (holding that erroneously introduced evidence must be "crucial, critical, highly significant") (quotation omitted)).

Viewing the entire record before the jury, the Court cannot say that the evidence as to the earlier fight between the victim and one of Baker's friends, in which Baker interjected himself and fired a gun, "remove[d] a reasonable doubt that would have existed on the record" had the prior crimes evidence not been introduced. *See Collins*, 755 F.2d at 19; *accord Dunnigan*, 137 F.3d at 125. Four eyewitnesses (the three surviving friends (i.e., Christopher, Jerold, and Leroy) and the driver of the car (Lester)) ultimately identified Baker as the shooter.

The Court recognizes that Christopher Jones and Jerold Mitchum at first told the police

-18-

that they could not identify the shooter. However, they provided credible explanations for whatever such "change" there may have been between their initial statements to police and their trial testimony. Both statements were taken the day after the shooting. Christopher explained that he was still extremely "confused and scared," having been shot three times (265). Jerold stated that when he initially talked to police, his brother was still alive, able to speak, and when Jerold began to tell police what had happened, his brother (Preston) cut him off and told him them "we didn't see nothing [sic]" (312). The reason, Jerold bluntly explained, was that Preston intended to retaliate against Petitioner for shooting him (314). After his brother died, Jerold explained that because he was not one to "retaliate", told police that he could identify the shooter (314-315). Sandra Lester, the driver who almost hit Petitioner as he ran across the street shooting at the group in front of the mini-mart, told police in her initial statement that she saw Petitioner's face; she also said she remembered it vividly because "[w]hen somebody go [sic] by your car and you are about to hit them," "you remember" (605).

In addition, Shannon Daszczyszak, the girl who went to the house where Petitioner stayed on Remington Street, saw a man dressed in camouflage pants and a black hoody– the same attire the shooter was identified as wearing–come to the door with a gun, and mention the name "Preston" (the name of the victim who died and the brother of Jerold, who had been involved in the earlier fistfight) (475-479).

Given the compelling proof demonstrating that Baker was the shooter, the Appellate Division did not unreasonably conclude that any error in admitting the prior uncharged crimes evidence was harmless because it did not remove a reasonable doubt that would have existed on the record without it.

-19-

### D.      Ground Four: Coercive Jury Instruction

Petitioner asserts that the trial court issued a coercive *Allen*[3] charge after a juror informed

the parties and the judge during deliberations that "she did not want to continue because her

fellow panelists already had a verdict without going over the trial evidence. Quote un [sic]

Quote." Petition, Attachment, ¶22(D) (Docket No. 1).  Respondent argues that the trial court's

*Allen* charge was simply encouraging rather than coercive, and was appropriate in light of the fact

that the "hypothetically 'deadlocked' jury had been deliberating for a relatively short period of

time." People's Appellate Brief at 21.

It is well settled that there is nothing improper with instructions that encourage a

deadlocked jury to reach a verdict, as long as "jurors are [not] encouraged to abandon, without

any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt."

*United States v. Melendez*, 60 F.3d 41, 51 (2d Cir.1995), *cert. denied as to appellant challenging*

*jury instruction sub nom. Sanchez v. United States*, 516 U.S. 1148, 116 S.Ct. 1020, 134 L.Ed.2d

99 (1996), *judgment vacated as to another appellant and on other grounds sub nom. Colon v.*

*United States*, 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). In *Allen*, the Supreme

Court approved a jury instruction that, in sum and substance, explained "that in a large

proportion of cases absolute certainty could not be expected; that, although the verdict must be

the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows,

yet they should examine the question submitted with candor, and with a proper regard and

deference to the opinions of each other; that it was their duty to decide the case if they could

conscientiously do so; that they should listen, with a disposition to be convinced, to each other's

---

[3]           *Allen v United States*, 164 U.S. 492 (1896).

arguments; that, if much the larger number were for conviction, a dissenting juror should

consider whether his doubt was a reasonable one which made no impression upon the minds of

so many men, equally honest, equally intelligent with himself" and "[i]f . . . the majority were for

acquittal, the minority ought to ask themselves whether they might not reasonably doubt the

correctness of a judgment which was not concurred in by the majority." *Allen v. United States*,

164 U.S. at 501. Noting that although "the verdict of the jury should represent the opinion of

each individual juror, it by no means follows that opinions may not be changed by conference in

the jury room[,]" *id.* at 501, the Supreme Court found that there was "no error in these

instructions[,]" *id.* at 502.

Viewing the trial judge's instructions in Baker's case against the charge found proper in

*Allen*, I conclude that the state courts did not unreasonably apply clearly established Supreme

Court precedent in determining that the charge was not coercive. The trial court was careful to

instruct that "[w]e do not want a jury verdict at any cost." The jurors were asked to attempt to

reach a unanimous verdict only "if you can do so without violating your individual judgment"

(1025). The trial court more than once reinforced the notion that none of the jurors should simply

give in because of the other jurors' beliefs, stating that "[e]ach of you must decide this case for

yourself and you should not surrender your honest conviction as to the weight solely because of

the opinion of your fellow jurors," that "we do not want anyone to compromise their consciously

held beliefs."  Although the trial court expressed "hope" that the jurors would reach a verdict, it

then stated, "again, we do not want anyone to abandon his or her position . . . just for the

purposes of reaching a verdict" (1025). The trail court also made it clear that deliberations would

not be prolonged indefinitely. When it gave the instruction at lunch-time, the trial court advised

that it was simply asking the jurors to "make one more effort to arrive at a verdict" and if they

were unable to do so "after a reasonable period of time after you have your lunch," the judge

would take the appropriate action (1026).

Petitioner argues that the charge, as a practical matter, put asymmetrical pressure on the

majority and on the juror who had come forward to announce that the jury was "deadlocked." "It

is true that when the court knows that a lone juror is deadlocking the jury, special caution is

appropriate to avoid coercion," and this is "all the more so when the holdout is aware that his

position is known to the judge." *United States v. Pirro*, No. 00-1722, 9 Fed.Appx. 45, *49, 2001

WL 474647, **2 (2d Cir. May 4, 2001) (unpublished opn.) (citing *Jiminez v. Myers*, 40 F.3d 976,

981 (9th Cir.1993); *United States v. Hynes*, 424 F.2d 754, 755 n. 2 (2d Cir.1970)). However, the

Supreme Court and the Second Circuit "have never held that the trial court must specifically

inform the jury that the majority must consider the arguments and the opinions of those in the

minority," *Melendez*, 60 F.3d at 52. Here, the trial judge's instruction did not single out the juror

in any improper or coercive fashion. That the trial court may have been aware that there was one

holdout juror did not make the charge coercive. *See United States v. Crispo*, 306 F.3d 71, 77 (2d

Cir.2002) (holding that where court knew jury was deadlocked 11 to 1, and the holdout juror

revealed her identity in court, "the fact that the judge knew that there was alone dissenter does

not make the charge coercive inasmuch as the nature of the deadlock was disclosed to the Court

voluntarily and without solicitation" (citations and quotation marks omitted)); *see also United

States v. Mejia*, 356 F.3d 470, 477 (2d Cir. 2004) (that the jury made its division known to the

court, without more, is not grounds for a mistrial or a bar to the court's *Allen* charge);

*Munoz v. Burge*, No. 02 CV-6198 (NGG)(LB), 2007 WL 7244783, at *10 (E.D.N.Y. May 27,

2007) (same); *Spragion v. Smith*, No. 04 CV 1880, 2005 WL 3535158, at *9 (E.D.N.Y. Dec. 23, 2005) (same).

Finally, the fact that the jury continued deliberations for almost five hours after the court delivered its *Allen* charge before arriving at a verdict weighs against finding that the charge was coercive. *See, e.g.*, *People v. Gonzalez*, 259 A.D.2d 631 (App. Div. 2d Dept. 1999).

The only problematic aspect of the trial court's charge was that it raised the possibility that a new trial would result if the jury were to be unable to reach a verdict, and that the jury in the subsequent case would be expected to reach a verdict. The fact that a new trial would be required if the jury could not reach a unanimous verdict is not in and of itself coercive. *E.g.*, *People v. Harrington*, 262 A.D.2d 220 (App. Div. 1st Dept. 1999). However, the Court believes it would have been better practice is this case, especially since there was a lone holdout juror, for the trial judge to have avoided reference to the possibility of a second trial if the jurors were not able to agree. As with all claims of an erroneous jury instruction, the challenged parts must not be read in isolation; rather, the charge must be read as a whole.

Contrary to defendant's contention, the Appellate Division's ruling that the court's *Allen* charge, as a whole, was "neutral and balanced" and was not coercive, did not amount to an unreasonable determination of clearly established Supreme Court law. Therefore, habeas relief is denied on this claim.

### E.     Ground Five: Harshness and Excessiveness of the Sentence

Petitioner contends that a review of his pre-sentence report indicates "nothing to warrant the severe sentence in this case." Petition, Attachment, ¶22(E) (Docket No. 1).  "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by

state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). Here, the sentencing court was

within its discretion in imposing consecutive sentences for the two convictions, which involved

two different victims. And, the length of the individual sentences were with the statutory range.

Baker's challenge to the length of his sentence thus does not raise a Federal constitutional

question. For this reason, it does not provide a cognizable ground for habeas relief and must be

dismissed.

        **F.**      **Grounds Six, Seven, and Eight: Ineffective Assistance of Appellate Counsel**

Petitioner claims that the prosecutor engaged in improper vouching during summation

(939, 958) with regard to the identification testimony of two witnesses. Petition, Attachment,

¶22(F) (Docket No. 1). Petitioner also asserts that he "adequately established on record that a

private meeting concerning his case and client of defendants [sic] attorney affected the conduct

of his defense." Petition, Attachment, ¶22(G) (Docket No. 1). Petitioner lastly faults appellate

counsel for failing to a raise a claim that the prosecutor purportedly did not disclose a witness'

"non-identification" to the defense. The Appellate Division summarily denied all of these claims

when they were presented in Baker's *coram nobis* application. *People v Baker*, 41 A.D.3d 1323

(App. Div. 4th Dept. 2007), *lv. denied*, 9 N.Y.3d 872 (N.Y. 2007).

A petitioner alleging ineffective assistance of appellate counsel must prove both that

appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and

that absent counsel's deficient performance in omitting certain claims or failing to adequately

argue claims that were raised, there is a reasonable probability that the petitioner's appeal would

have been successful. *Mayo v Henderson*, 13 F.3d 528 (2d Cir. 1994), *cert denied*, 513 U.S. 820

(1994). This Court then must view the claim through the lens of 28 U.S.C. § 2254(d)(1) in order

to determine not whether the state court was incorrect or erroneous in rejecting Baker's claim ineffective assistance of appellate counsel, but whether it was "objectively unreasonable" in doing so. *Sellan v. Kuhlmann*, 261 F.3d at 315 (citing *Williams*, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

In attempting to establish that appellate counsel's failure to raise a state claim constitutes deficient performance, it is insufficient for the petitioner to show "merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Whether the neglected appellate issue is based on federal or state law, the burden rests on Baker to show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* In assessing appellate counsel's performance, I must judge the conduct at issue on the basis of the facts of the particular case, viewed as of the time that counsel was preparing the appeal. *Strickland*, 466 U.S. at 690. Furthermore, I must make every attempt to eliminate the distorting effects of hindsight from my evaluation of his performance. *See Lockhart v. Fretwell*, 506 U.S. 364 (1993); *accord Mayo*, 13 F.3d at 533.

Here, contrary to Baker's contentions, appellate counsel did not forsake the pursuit of stronger claims in order to raise ones that were relatively weaker. Baker's appellate counsel raised a number of potentially meritorious claims and presented them in a thorough, well-researched, and well-argued brief. The Appellate Division overlooked the lack of preservation

regarding the insufficiency-of-the-evidence claim, and discussed it fairly extensively on the merits. The Appellate Division also addressed the remainder of Baker's claims on the merits.

In comparison to the claims raised by appellate counsel, the omitted claims urged by Baker were significantly weaker and had little to likelihood of success on appeal. A hallmark of effective advocacy involves "winnowing out weaker arguments" and "focusing on" those more likely to prevail, *Smith*, 477 U.S. at 536, 106 S.Ct. 2661 (quotation omitted). This is what appellate counsel did in this case. Accordingly, I find no basis for concluding that it was an "unreasonable application" of *Strickland* for the Appellate Division to have resolved Baker's ineffective assistance of appellate counsel claim against him.

### G.     Ground Nine: Repugnant Verdicts

Baker contends that the behavior underlying all three counts of the indictment on which he was convicted involved "firing a gun at the complainant" which, he argues, could not have been done both recklessly and with the intent to injure. Petition, Attachment, ¶22(I). Therefore, Baker concludes, the jury's verdict is "inherently inconsistent" and violates his due process rights.

Even if Baker were correct, inconsistent jury verdicts are not a ground for habeas relief. *See*, *e.g.*, *United States v. Powell*, 469 U.S. 57, 58, 69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("[R]espondent argues that the jury could not properly have acquitted her of conspiracy to possess cocaine and possession of cocaine, and still found her guilty of using the telephone to facilitate those offenses. The Government does not dispute the inconsistency here. For the reasons previously stated, however, there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled."); *Harris v. Rivera*, 454 U.S. 339, 345, 102

S.Ct. 460, 70 L.Ed.2d 530 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting

it aside. We have so held with respect to inconsistency between verdicts on separate charges

against one defendant, *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356

(1932), and also with respect to verdicts that treat codefendants in a joint trial inconsistently,

*United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48, (1943)."); *United*

*States v. Acosta*, 17 F.3d 538, 545 (2d Cir.1994) ("It has long been established that inconsistency

in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of

the verdicts of guilty."); *accord*, *e.g.*, *United States v. Chang An-Lo*, 851 F.2d 547, 559-60 (2d

Cir.1988) (following *Powell* and declining to vacate arguably inconsistent verdicts), *cert. denied*,

488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1989).  In view of the well-established law, this

claim must be dismissed because it fails to state a Federal constitutional claim cognizable on

habeas review.

### H.        Ground Ten: Multiplicitousness of the Indictment

Baker contends that the indictment was "contradictory" because the prosecutor charged

"two counts with opposite mens rea arisen [sic] from one single act, namely intentional murder

and non intentional [i.e., depraved indifference] murder." Petition, Attachment, ¶22(J) (Docket

No. 1).

"An indictment is multiplicitous when it charges a single offense as an offense multiple

times, in separate counts, when, in law and fact, only one crime has been committed." *United*

*States v. Chacko*, 69 F.3d 140, 145 (2d Cir. 1999) (footnote omitted). "This violates the Double

Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime

more than once." *Id.*  (citing U.S. Const. amend. V; *United States v. Dixon*, 509 U.S. 688, 696,

113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) ("In both the multiple punishment and multiple

prosecution contexts, this Court has concluded that where the two offenses for which the

defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar

applies.") (other citation omitted).

The Court does not believe that Baker's allegations state a claim of multiplicitousness.

However, even if they did, and even if it were improper for the prosecutor to charge both

depraved indifference and intentional murder in the indictment, there was no Double Jeopardy

violation since Baker was only convicted of one count of murder, the one charging him with an

intentional killing; he was acquitted of the depraved indifference murder count. This claim

accordingly does not warrant habeas relief.

## VI.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make a

substantial showing of a denial of a constitutional right, I decline to issue a certificate of

appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Hon Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:       March 8, 2011
             Rochester, New York